1

2

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

3

4

PATRICK HABLE,                                   )
                                                 )
               Plaintiff,                        )     Case No.: 2:22-cv-02012-GMN-BNW

5

       vs.                                       )
                                                 )

6

BENN GODENZI,                                    )     **ORDER GRANTING MOTION TO**
                                                 )     **DISMISS**

7

               Defendant.                        )
                                                 )

8

                                                 )

9        Pending before the Court is the Motion to Dismiss, (ECF No. 26), filed by Defendant

10   Benn Godenzi.  Also pending before the Court is Defendant's Motion for Judicial Notice in

11   Support of his Motion to Dismiss, (ECF No. 27).  Plaintiff Patrick Hable filed a Response,

12   (ECF No. 28), and Defendant filed a Reply, (ECF No. 29).

13        The Court **GRANTS in part and DENIES in part** Defendant's Motion for Judicial

14   Notice.  The Court further **GRANTS** Defendant's Motion to Dismiss but dismisses the case

15   **without prejudice** because Plaintiff failed to allege a material misrepresentation or omission

16   made with scienter.

17   **I.        BACKGROUND**

18        Plaintiff bought cryptocurrency from Defendant and now sues Defendant for alleged

19   securities fraud. (*See generally* First Amended Complaint ("FAC"), ECF No. 23).  The

20   cryptocurrency purchased in this case, ECOMI ("OMI"), is issued by the Singapore-based

21   company, Ecomi. (*Id.* ¶ 1).  Ecomi is operated by Orbis Blockchain Technologies, a New

22   Zealand company. (*Id.* ¶ 13 n.1).  In 2018, Ecomi hired Defendant, through his company MB

23   Technology, to advise Ecomi on the structure of OMI tokens. (*Id.* ¶ 21).  When Ecomi failed to

24   pay Defendant for his advising service, he sued Ecomi in Singapore through his company MB

25   Technology. (*Id.* ¶ 22).

Around the same time, Defendant brought a second lawsuit in New Zealand against Orbis, Ecomi's parent company, related to an investment contract between MB Technology and Orbis. (*Id.* ¶¶ 22, 36–38).  The New Zealand Court froze Ecomi's New Zealand assets pending the Singapore litigation. (*Id.* ¶ 22).  The parties settled the Singapore litigation in 2021. (*Id.* ¶ 24).  After the Singapore settlement, Defendant wrote a chat message on YouTube, apparently to another commenter, that "we *had* a dispute *and moved on*," in reference to the Singapore litigation. (*Id.* ¶ 30) (emphasis in FAC).  He further explained that his contract payment was delayed but the "*dispute was settled and we parted ways amicably*." (*Id.* ¶ 31) (emphasis in FAC).  Thus, Plaintiff alleges, Defendant "told the market that his litigation was resolved," even though the litigation in New Zealand was ongoing. (*Id.* ¶ 34).

In December of 2021, believing that all ongoing litigation had been resolved, Plaintiff agreed to purchase OMI tokens from Defendant. (*Id.* ¶ 44).  Defendant told Plaintiff that Ecomi had not paid his contract for a year, "which led to a lawsuit *and of course a settlement*." (*Id.*) (emphasis in FAC).  Following price negotiations, Plaintiff purchased several billion OMI tokens from Defendant for $12 million worth of USDC currency through multiple transactions. (*Id.* ¶ 48).

On June 7, 2022, a New Zealand newspaper called Businessdesk published a story revealing that the suit against Orbis was ongoing in New Zealand. (*Id.* ¶ 2).  While the parties dispute the ways in which this news affected the market, Plaintiff alleges that in the six weeks before the article was published, the price of OMI fell 41%. (*Id.*)  In the six days after, the price fell another 36%. (*Id.*).  Plaintiff claims that he would not have purchased the tokens from Defendant if he knew that litigation was ongoing in New Zealand, and he alleges that the sales constitute securities fraud in violation of the Securities Act, securities fraud under Nevada law, and fraud. (*Id.* ¶ 3).  Defendant moves to dismiss, arguing that all three claims are insufficiently pled. (*See generally* Mot. Dismiss, ECF No. 26).

## II.                    LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(6) where a pleader fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6).  A pleading must give fair notice of a legally cognizable claim and the grounds on which it rests, and although a court must take all factual allegations as true, legal conclusions couched as factual allegations are insufficient. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Accordingly, Rule 12(b)(6) requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.*  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*  This standard "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

## III.                    DISCUSSION

Defendant moves to dismiss all claims with prejudice in Plaintiff's FAC.  He also asks the Court to take judicial notice of 23 exhibits relating to the foreign litigation, price of OMI, and cryptocurrency market trends.  The Court first addresses Defendant's Motion for Judicial Notice, and then determines whether Plaintiff's claims have been sufficiently pled.

### A. Motion for Judicial Notice

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  The Court "may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Otherwise, if a court

considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. Fed. R. Civ. P. 12(d).

Defendant requests that the Court take judicial notice of the exhibits attached to its motion and the "general downward trend exhibited by crypto assets during the relevant 6-week period identified in the FAC." (Mot. Jud. Notice 2:24–3:2, ECF No. 27).  The first four exhibits are court documents relating to the foreign litigation in New Zealand and Singapore. (*Id.* 6:10–14).  Following other courts in this circuit, the Court takes judicial notice of these documents for the fact of their filing and relevant parties, but not for the truth of the matters asserted. *See Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1090 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020*)*; *In re Ex Parte Application of Jommi*, No. C 13-80212 CRB (EDL), 2013 WL 6058201, at *2 n.1 (N.D. Cal. Nov. 15, 2013).

It is also proper for the Court to consider Exhibit 5, the BusinessDesk article quoted and relied upon in Plaintiff's FAC. (*See* FAC ¶¶ 2, 14, 37).  "[D]ocuments whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss." *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994), *overruled on other grounds by Galbraith v. Cty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

The Court does not take judicial notice of Exhibits 6–17, which demonstrate the pricing trends of the OMI token and cryptocurrency markets during the relevant time period.  Although courts commonly take judicial notice of historical stock prices and market trends when ruling on a motion to dismiss, the accuracy of the sources reporting cryptocurrency market prices and trends could reasonably be questioned. *See* Fed. R. Evid. 201(b)(2).  Plaintiff disputes the comparisons and price data put forward by Defendant and argues that Ecomi is not comparable to the assets in one of Defendant's proposed indexes. (Resp. 18:26–19:22).  Thus, the Court cannot take judicial notice of Exhibits 6–17 at this stage in the proceedings.

1    Lastly, the Court takes judicial notice of the news articles, Exhibits 18–23, for the

2  narrow purpose of demonstrating that stories about the cryptocurrency market decline were in

3  the public realm after the articles were published. *See Heliotrope Gen., Inc. v. Ford Motor Co.*,

4  189 F.3d 971, 981 (9th Cir. 1999) (taking judicial notice that market was aware of information

5  in news articles); *see also In re Am. Apparel, Inc. S'holder Litig.*, 855 F.Supp.2d 1043, 1062

6  (C.D. Cal. 2012) (same).  The Court does not take judicial notice of the truth or accuracy of the

7  news articles' assertions. *See Von Saher v. Norton Simon Museum of Art at Pasadena*, 592 F.3d

8  954, 960 (9th Cir. 2010).  Accordingly, the Court GRANTS in part and DENIES in part

9  Defendant's Motion for Judicial Notice.

10    **B.  Securities Fraud Pursuant to Rule 10(b)(5)**

11    Defendant argues that Plaintiff's Federal Securities Claim fails because Plaintiff has not

12  adequately pled all elements required for a claim of private securities fraud. (Mot. Dismiss

13  2:10–3:6; 19:22–20:7).[1]  Section 10(b) of the Exchange Act and its corresponding Rule 10b–5

14  prohibit the use of fraud or deceit in connection with the purchase or sale of a security.

15  15 U.S.C. § 77j(b); 17 C.F.R. § 240.10b-5.  The elements of a private securities fraud claim are:

16  (1) a material misrepresentation or omission, (2) scienter, (3) a connection with the purchase or

17  sale of a security, (4) reliance, (5) economic loss, and (6) loss causation. *Dura Pharm., Inc. v.*

18  *Broudo*, 544 U.S. 336, 341 (2005).

19    Beyond meeting the demands of Rule 12(b)(6), to survive a motion to dismiss, a plaintiff

20  asserting securities fraud claims must satisfy the heightened pleading requirements of Federal

21  Rule of Civil Procedure 9(b) and the Private Securities Litigation Reform Act ("PSLRA"). *See*

22  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321–24 (2007).  Under Rule 9(b), "a

23

24

25

---

[1]  Defendant also argues that Plaintiff's Federal Securities claim must fail because it is an extraterritorial
application of law and therefore does not qualify as a domestic transaction. (Mot. Dismiss 19:22–20:7).  But
even assuming without deciding that Federal Securities Law applies, Plaintiff did not sufficiently plead the facts
necessary for any of his three fraud related claims, so the Court dismisses the claims on those grounds.

party must state with particularity the circumstances constituting fraud . . . .” Fed. R. Civ. P. 9(b).  To comply with this rule, the complaint must include an account of the “time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation.” *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004) (quoting *Alan Neuman Prods., Inc. v. Albright*, 862 F.2d 1388, 1393 (9th Cir.1989)).  Fraud allegations must be “specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong.” *Neubronner v. Milken,* 6 F.3d 666, 672 (9th Cir. 1993) (internal quotation marks omitted).

The PSLRA requires that a complaint “specify each statement alleged to have been false or misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.” 15 U.S.C. § 78u–4(b)(2).  Further, when recovery is dependent on a showing that defendant acted with a particular state of mind, “the complaint shall [...] state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.” *Id.*

### 1.  Material Misrepresentation or Omission

Plaintiff claims that he relied on two false or misleading statements when purchasing OMI from Defendant.  Defendant’s first alleged statement was made on July 30, 2021, six months before Plaintiff purchased OMI. (FAC ¶ 30).  Defendant wrote, in reference to the Singapore litigation, that “we *had* a dispute *and moved on*.” (*Id.*) (emphasis in FAC). Defendant explained that his “contract payment was delayed for about a year,” and he “had no other choice but to start the legal action.” (*Id.* ¶ 31).  He continued, “[t]he dispute was settled and we parted ways amicably.” (*Id.*).  Plaintiff argues that even though Defendant knew litigation was ongoing in New Zealand, he “told the market that his litigation was resolved.”

1    (*Id.* ¶ 34).  And, Plaintiff claims, the parties could not have parted ways amicably because MB

2    Technologies was still in litigation with Orbis in New Zealand. (Resp. 13:8–12).

3        The second allegedly misleading statement occurred when Plaintiff and Defendant

4    discussed the potential sale of OMI.  In an online chat, Defendant told Plaintiff that Ecomi had

5    not paid his team's contract for a year, "which led to a lawsuit *and of course a settlement*."

6    (FAC ¶ 44) (emphasis in FAC).  Defendant then told Plaintiff that his team could offer Plaintiff

7    a 10% discount on that day's price of OMI, but that "they won't be doing more than 1b for

8    now." (*Id.* ¶ 45).  Plaintiff clarified the market price, and Defendant replied, "yes that's okay."

9    (*Id.* ¶ 46–47).  Plaintiff then purchased several billion OMI tokens from Defendant in exchange

10   for $12 million worth of USDC, another cryptocurrency. (*Id.* ¶ 48).

11       A statement is false if it "directly contradict[s] what the defendant knew at that time,"

12   and is misleading if it "omits material information." *Khoja v. Orexigen Therapeutics, Inc.*, 899

13   F.3d 988, 1008–09 (9th Cir. 2018).  An omission is misleading if it "affirmatively create[s] an

14   impression of a state of affairs that differs in a material way from the one that actually exists."

15   *Brody v. Transitional Hosps. Corp.*, 280 F.3d 997, 1006 (9th Cir. 2002).  "[O]nce defendants

16   [choose] to tout positive information to the market, they [are] bound to do so in a manner that

17   wouldn't mislead investors, including disclosing adverse information that cuts against the

18   positive information." *Schueneman v. Arena Pharm., Inc.*, 840 F.3d 698, 705–06 (9th Cir.

19   2016) (quotation marks and citation omitted).

20       Defendant moves to dismiss, contending that he did not make a false or misleading

21   statement. (*See* Mot. Dismiss 17:6–13).  On the contrary, he claims that his statements were

22   entirely true because he *did* settle the contract payment litigation. (*Id.*).  Moreover, Defendant

23   claims, the FAC does not suggest that the New Zealand litigation was material to Ecomi's

24   operations, and his subjective opinion regarding his "amicable" relationship with Ecomi would

25   not qualify as a misrepresentation. (*Id.* 17:9–23).  Conversely, Plaintiff argues that both

1    statements were misleading, and the statement that Defendant and Ecomi "parted ways

2    amicably," was false. (Resp. 13:8–12).  Plaintiff argues that the statements were made to give

3    Defendant the impression that litigation was over, and that the statement that the parties "parted

4    ways amicably" was "meant to leave readers with the false impression that his legal conflict

5    with Ecomi had concluded." (*Id.* 14:10–15:19).

6         As an initial matter, the Court does not find the statement that the parties "parted ways

7    amicably," to be false or misleading.  The face of the FAC states that "Godenzi and Ecomi

8    settled the Singapore litigation," and this litigation focused on Defendant's unpaid advising

9    contract. (FAC ¶ 22–24).  In context, Defendant's statement referred only to the Singapore

10   contract dispute.  Moreover, the statement that the parties had "parted ways amicably" is not

11   obviously untrue or misleading merely because Defendant's company MB Technologies was in

12   litigation with Orbis over an investment contract.  Indeed, "[t]o be misleading, a statement must

13   be capable of objective verification." *Retail Wholesale & Dep't Store Union Local 338 Ret.*

14   *Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1275 (9th Cir. 2017).  Next, the Court must

15   evaluate whether Defendant's statements regarding settlement were materially misleading.

16        "Whether its allegations concern an omission or a misstatement, a plaintiff must allege

17   materiality." *Khoja*, 899 F.3d at 1009.  For a misrepresentation or omission to be material,

18   "there must be a substantial likelihood that the disclosure of the omitted fact would have been

19   viewed by the reasonable investor as having significantly altered the 'total mix' of information

20   made available." *TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976).  Put another

21   way, a statement is material if "there is a substantial likelihood that a reasonable investor would

22   have acted differently if the misrepresentation had not been made or the truth had been

23   disclosed." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir.

24   2005).  However, "[Section] 10(b) and Rule 10b-5(b) do not create an affirmative duty to

25   disclose any and all material information.  Disclosure is required under these provisions only

1   when necessary 'to make . . . statements made, in the light of the circumstances under which

2   they were made, not misleading.'" *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44

3   (2011) (quoting 17 C.F.R. § 240.10b-5(b)).

4         Plaintiff did not sufficiently plead that the statements were materiality misleading.

5   Defendant was obligated to mention the New Zealand lawsuit only if it was required to ensure

6   that his statements about the Singapore litigation were not misleading.  But as mentioned

7   above, Defendant was discussing his own unpaid advising contract litigation against Ecomi, not

8   all pending litigation against Ecomi and Orbis.  Further, Plaintiff does not adequately allege

9   why the New Zealand litigation would be material to a reasonable investor.  It is not uncommon

10  for companies to be in litigation.  And although the FAC alleged that Ecomi agreed to transfer

11  11.8 billion tokens to MB Technology if MB Technology invested in Orbis, (FAC ¶ 37), the

12  Court is left to draw its own conclusions about why this information would cause a reasonable

13  investor to act differently.

14        Plaintiff's allegations regarding the materiality of the New Zealand suit are sparse.  First,

15  if OMI has a maximum supply of 750 billion tokens, (*id.* ¶ 14), the FAC does not explain why a

16  lawsuit involving less than 2% of its total tokens is material.  Second, Plaintiff explained that

17  the "fact of litigation is generally very important to the market for the tokens," but only

18  supported this conclusion with allegations that a few online commenters were worried about the

19  Singapore litigation. (*See id.* ¶¶ 26–29; 49).  Plaintiff put forward no facts to demonstrate that

20  commenters were equally concerned about the New Zealand litigation.  Finally, Plaintiff

21  alleged that Ecomi's assets were frozen while the Singapore litigation was pending, which

22  would clearly be significant to a reasonable investor, but did not allege that Ecomi's assets

23  remained frozen after the Singapore litigation settled. (*See id.* ¶ 22).

24       In the New Zealand Judgment, Judge Jagose described the two proceedings as

25  "relatively distinct." (Judgment of Jagose, J., Ex. 4 to Mot. Jud. Notice, ECF No. 27-4).

Although this Court does not take the judgment's factual allegations as true, it does find the Judge's description of the two cases to be helpful in determining the relatedness of the actions. The Judge explained that the Singapore lawsuit "related to MB Technology's compensation in OMI tokens" for its advising and exchange listing services to Ecomi, while the New Zealand lawsuit involved "MB Technology's share subscription and transfer investments in Orbis, for which it also was to acquire OMI tokens as a 'bonus' for such investment." (*Id.* ¶ 18).  The Judge further drew a distinction between the two cases by noting that "[n]othing in MB Technology's compensation for its provision of services to Ecomi appears to have required it in invest in Orbis." (*Id.*).

   With these distinctions in mind, Defendant's statements regarding the Singapore litigation did not "affirmatively create an impression of a state of affairs that differs in a material way from the one that actually exists." *See Matrixx Initiatives*, 563 U.S. at 44.  At the time both statements were made, MB Technologies and Ecomi had settled the unpaid contract dispute.  Defendant did not create a materially different impression by omitting the fact that MB Technologies had also sued Orbis in New Zealand over an investment dispute.  Put another way, Defendant did not create the impression that *all* litigation against Ecomi or Orbis had been settled.  Thus, Plaintiff failed to adequately plead a material misrepresentation or omission of fact.

### 2. **Scienter**

   To plead scienter, a plaintiff must "'state with particularity facts giving rise to a strong inference' that defendants acted with the intent to deceive or with deliberate recklessness as to the possibility of misleading investors." *Berson v. Applied Signal Tech., Inc.*, 527 F.3d 982, 987 (9th Cir. 2008) (citing 15 U.S.C. § 78u–4(b)(2)).  "Facts showing mere recklessness or a motive to commit fraud and opportunity to do so provide some reasonable inference of intent, but are not sufficient to establish a strong inference of deliberate recklessness." *In re VeriFone*

*Holdings, Inc. Sec. Litig.*, 704 F.3d 694, 701 (9th Cir. 2012).  Courts must "accept all factual allegations in the complaint as true" and "consider the complaint in its entirety." *Tellabs*, 551 U.S. at 322. "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322–23.  Scienter is adequately alleged when "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* at 324.

According to Plaintiff, Defendant "intended to sell OMI tokens that he would otherwise have been unable to sell at his desired price or, alternatively or additionally, because he knew that Hable would not buy the tokens if he knew the truth." (FAC ¶ 74).  Defendant moves to dismiss, arguing that the FAC lacks substantive allegations about his intent to deceive or manipulate. (Mot. Dismiss 18:24–27).  Defendant argues that the more plausible explanation for his statements is that they were truthful and innocent. (*Id.* 18:27–19:1).  In his Response, Plaintiff maintains that a finding of scienter is the only explanation as to why Defendant would mention the litigation settlement to Plaintiff during the sale, even though Plaintiff did not directly ask Defendant about the Singapore litigation. (Resp. 17:3–18).

Considering the FAC in its entirety, the Court does not find that all facts alleged, taken collectively, give rise to a strong inference of scienter.  The first alleged misrepresentation or omission was written by Defendant six months prior to his sale of OMI to Plaintiff, and nothing alleged in the FAC allows the Court to infer that it had anything to do with Defendant's planned sale of OMI to Plaintiff.  If Defendant merely "sought to alleviate negative market information arising from public discussions about the Singapore litigation," (FAC ¶ 30), this motivation does not lead to an inference of intent to deceive, or even deliberate recklessness.

Defendant's second statement, directly to Plaintiff, does little to support an inference of scienter.  This statement was made to Plaintiff in response to the following message from

Plaintiff: "I learned that you were responsible for the OMI tokenomics [an industry term for the design structure of a crypto token] which I find very interesting." (FAC ¶ 44).  Taking as true Plaintiff's allegation that the Singapore litigation "made potential buyers of OMI wary," (*id.* ¶ 25), the Court finds that the purpose of Defendant's statement was more likely to ensure Plaintiff that the *Singapore* litigation had ended rather than to deceive Plaintiff into believing that *all* litigation involving Ecomi or Orbis had ended.  Defendant's omission of the second lawsuit may have been reckless or negligent, but the facts alleged do not demonstrate a strong inference of *deliberate* recklessness.  Thus, Plaintiff has not adequately alleged that Defendant had the requisite state of mind.

### 3.  Reliance

A 10(b) cause of action requires reliance on the defendant's deceptive act because it ensures the "requisite causal connection between a defendant's misrepresentation and a plaintiff's injury." *Basic Inc. v. Levinson*, 485 U.S. 224, 243 (1988).  Defendant argues that Plaintiff failed to adequately plead reliance because the FAC's statements are conclusory. (Mot. Dismiss 19:14–17).  But the FAC does allege that Plaintiff relied on Defendant's statements when purchasing OMI, and the Court must take this factual allegation as true. (*See* FAC ¶¶ 1, 73).  Therefore, the Court finds that Plaintiff sufficiently pled the reliance element.

### 4.  Loss causation

Loss causation, "i.e. a causal connection between the material misrepresentation and the loss" experienced by the plaintiff, is a necessary element of pleading a securities fraud claim under section 10(b) of the Exchange Act. *Dura Pharm., Inc.*, 544 U.S. at 342.  The complaint must allege that the "share price fell significantly after the truth became known." *Id.* at 347. "Typically, 'to satisfy the loss causation requirement, the plaintiff must show that the revelation of that misrepresentation or omission was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff.'" *Nuveen Mun. High*

1   *Income Opportunity Fund v. City of Alameda*, 730 F.3d 1111, 1119 (9th Cir. 2013) (quoting

2   *McCage v. Ernst & Young, LLP*, 494 F.3d 418, 425–26 (3d. Cir. 2007)).  Loss causation

3   allegations may be insufficient where a "modest" drop in the stock prices coincides with the

4   disclosure of certain news but then "recover[s] very shortly after." *Wochos v. Tesla*, 985 F.3d

5   1180, 1197 (9th Cir. 2021) (citing *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d

6   1049, 1064–65 (9th Cir. 2008)).

7          Plaintiff alleges that the publication of the BusinessDesk article led to a "drastic"

8   decrease in token price. (FAC ¶ 42).  "On June 7, 2022, the day before the article came out,

9   OMI was trading for $.00163228 per token. By June 13, OMI was trading for $.001038 per

10  token, representing a decline of 36% in just six days." (*Id.*).  Plaintiff further alleges that the

11  news of the New Zealand litigation likely began to spread amongst insiders prior to the release

12  of the BusinessDesk article, which would explain another drop in the price of OMI of 41% in

13  the weeks prior to the article being published. (*Id.* ¶ 43).

14         Defendant argues that Plaintiff did not sufficiently plead loss causation for four primary

15  reasons: (1) the drop in OMI token price began six weeks prior to the publication of the

16  BusinessDesk article; (2) historical pricing information reveals that the OMI token price did not

17  fall for several days following the publication; (3) the more plausible reason for the price drop

18  was the downturn of the entire cryptocurrency market; and (4) the token price recovered above

19  the June 7, 2022, price by July 7, 2022. (Mot. Dismiss 12:14–15:25).  The Court addresses each

20  of Defendant's arguments in turn.

21         Beginning with Defendant's first argument, the Court agrees with Defendant that loss

22  causation is measured by the market's reaction to the revealed truth, not by losses that took

23  place before the revelation.  "To adequately plead loss causation, the Court held, a plaintiff

24  must allege that the 'share price fell significantly after the truth became known.'" *In re Oracle

25  Corp. Sec. Litig.*, 627 F.3d 376, 392 (9th Cir. 2010) (*quoting Dura Pharm., Inc.*, 544 U.S. at

344–45)).  "The market need not know at the time that the practices in question constitute a 'fraud,' nor label them 'fraudulent,' but in order to establish loss causation, the market must learn of and react to those particular practices themselves." *Id.* (citing *Metzler*, 540 F.3d at 1063).  But even ignoring the alleged 41% drop in the six weeks before the article's publication, Plaintiff still alleges a 36% price drop post-publication.  So this argument does not defeat Plaintiff's loss causation allegations.

And as to Defendant's second argument, because the Court declines to take judicial notice of historical OMI pricing at this stage in the litigation, the Court accepts the FAC's 36% price decrease allegation as true.

Third, the Court disagrees with Defendant that the downward trend of the entire cryptocurrency market is a far more plausible explanation for OMI's price decline.  Even though the Court takes judicial notice that the market was aware of the reported market decline, the Court nonetheless finds that the revelation of the New Zealand litigation was properly alleged as a substantial factor in the price decline.  The Court does not take judicial notice of the truth of the allegations contained in the news articles, namely, that the cryptocurrency market actually *was* in a steep decline during the relevant period.  It is plausible that the market was aware of the stories discussing the cryptocurrency market's overall decline, and that is one of the factors contributing to the price decline.  But until a fact-finder determines just how closely OMI's decline did or did not follow the market, the Court cannot affirmatively decide that Defendant's explanation is "far more plausible" than Plaintiff's explanation. *See Metzler*, 540 F.3d at 1065.

Defendant also cites three Ninth Circuit cases for the proposition that loss causation is not properly alleged when the stock price quickly recovers. (Mot. Dismiss 15:8–17).  According to Defendant, the OMI token price was fully recovered by July 7, 2022, exactly one month after the article's publication. (*Id.*).  In the cases cited by Defendant, however, the stock

1  price recovered in mere days. *See Metzler*, 540 F.3d at 1065 (finding no loss causation when

2  the stock rebounded within three trading days); *Loos v. Immersion Corp.*, 762 F.3d 880, 889

3  (9th Cir. 2014) (discussing the three-day recovery in *Metzler*); *Wochos*, 985 F.3d at 1197 (no

4  loss causation where the stock price rebounded on the next trading day).  Because these cases

5  are distinguishable from the facts in this case, the Court finds that Plaintiff plausibly pled loss

6  causation.  However, because Plaintiff did not properly plead a material misrepresentation

7  whose revelation caused the alleged drop in stock price, the fact that he has properly pled loss

8  causation does not rescue the fatal flaw in his federal securities claim.

9           **C.  Nevada Securities Act Claim and Fraud Claim**

10          Plaintiff alleges that the same two misrepresentations referenced above also constitute a

11  violation of the Nevada Securities Act and common law fraud.  Like the Federal Securities Act,

12  Section 90.570(2) of the Nevada Revised Statutes requires a false statement of material fact or

13  an omission of a material fact:

14          In connection with the offer to sell, sale, offer to purchase or purchase of a security,
        a person shall not, directly or indirectly:
15      2. Make an untrue statement of a material fact or omit to state a material fact
        necessary in order to make the statements made not misleading in the light of the
16      circumstances under which they are made . . . .

17

18          To state a claim for fraudulent misrepresentation under Nevada law, Plaintiff must allege

19  "(1) a false representation made by the defendant; (2) defendant's knowledge or belief that its

20  representation was false or that defendant has an insufficient basis of information for making

21  the representation; (3) defendant intended to induce plaintiff to act or refrain from acting upon

22  the misrepresentation; and (4) damage to the plaintiff as a result of relying on the

23  misrepresentation." *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1386 (Nev. 1998).  Because

24  Plaintiff has failed to allege a material misrepresentation or omission, as explained above, he

25

1  has failed to properly allege claims for violation of the Nevada Securities Act and common law

2  fraud.  Accordingly, these claims must also be dismissed.

3  **D.  Leave to Amend**

4  If the court grants a motion to dismiss for failure to state a claim, leave to amend should

5  be granted unless it is clear that the deficiencies of the complaint cannot be cured by

6  amendment. *DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).  Pursuant

7  to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in

8  the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the

9  movant, repeated failure to cure deficiencies by amendments previously allowed, undue

10  prejudice to the opposing party by virtue of allowance of the amendment, futility of the

11  amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Because this is the Court's first

12  dismissal, and Plaintiff may be able to plead additional facts to support his claims, the Court

13  GRANTS Plaintiff leave to file an amended complaint within 14 days of the date of this Order.

14  **V.      CONCLUSION**

15  **IT IS HEREBY ORDERED** that Defendant's Motion to Dismiss, (ECF No. 26), is

16  **GRANTED,** but the Court dismisses the case **without prejudice.**

17  **IT IS FURTHER ORDERED** that Plaintiff shall have 14 days from the date of this

18  Order to file an amended complaint.  Failure to file an amended complaint by the required date

19  will result in the Court dismissing Plaintiff's claims with prejudice.

20  **IT IS FURTHER ORDERED** that Defendant's Motion for Judicial Notice, (ECF No.

21  27) is **GRANTED in part and DENIED in part.**

22  **DATED** this   12   day of December, 2023.

23

24  _____

25  Gloria M. Navarro, District Judge
   UNITED STATES DISTRICT COURT